# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| -vs- | ) Case No. CIV-16-1067-F<br>) |
| GOOD TO GO, LLC d/b/a VISTA MEDICAL CENTER, et al., | )<br>)<br>) |
| Defendants. | )<br>) |
| and | )<br>) |
| GOOD TO GO, LLC d/b/a VISTA MEDICAL CENTER and PATRICK REYNOLDS, | )<br>)<br>)<br>) |
| Plaintiffs | )<br>) |
| -vs- | )<br>) |
| CONTINENTAL CASUALTY COMPANY, | )<br>)<br>) |
| Defendant. | ) |

## **ORDER**

At an earlier stage, the court held that attorney Rex Travis is entitled to an equitable lien on state-court settlement proceeds which are payable to state-court plaintiffs or to the state-court plaintiffs' attorneys, by which lien Travis may recover a fee for services he rendered in this federal action to his clients, Good to Go, LLC d/b/a Vista Medical Center, and Patrick Reynolds. Doc. no. 172. (Good To Go and

Reynolds are Travis's clients in this federal action only.  Travis did not represent these parties in any of the underlying state-court tort actions brought by state-court plaintiffs against Good to Go and Reynolds.)  The court resolved the equitable lien issues in favor of Travis, having found (among other things) that the legal services Travis rendered in this federal action benefitted the state-court plaintiffs and their state-court attorneys in achieving settlements of the state-court actions.  *Id*. at p. 7, ¶3 ("Travis's work benefitted the state-court plaintiffs and their state-court attorneys.").

Three motions are now before the court.  The motions are filed by state-court plaintiffs, each of whom is also a party in this federal action.  The motions are doc. nos. 176 (Pretzer and Martin[1]), 183 (Adams, Carista, Curnett, Green, Johnson, Broadbooks) and 187 (Livsey, DeGiusti).  Travis responded in a consolidated brief, objecting to relief.  Doc. no. 191.  Movants filed reply briefs.  Doc. nos.  192, 193, 194.  Although the motions use different formats, they seek the same result -- extinguishment (or a bar) of Travis's equitable lien on the state-court settlement proceeds.

The motions will be denied for the reasons stated below.

## Discussion

All three motions set out factual and legal propositions in support of dispositive relief (extinguishment of Travis's equitable lien), based on a document entitled "Settlement Agreement and Release of All Claims."   One of the motions is entitled a motion for summary judgment.  The other two motions ask the court to

---

[1] Although there is no party by the name of "Philip Martin" on the docket sheet, movant Philip Martin appears to be the party referred to on the docket sheet (and in other filings) as "Philip Hugh."  *See*, doc. no. 178-2 (agreement of Philip Hugh Martin).  If this is incorrect, counsel for Martin **SHALL** notify the deputy clerk immediately.

enforce a settlement agreement. In these circumstances it is appropriate to treat all three of the motions as summary judgment motions, and the court will do so.

Under Rule 56, Fed. R. Civ. P., summary judgment shall be granted if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

As already stated, movants argue that Travis's equitable lien is extinguished by a provision found in a document entitled "Settlement Agreement and Release of All Claims" (hereafter, the agreement). Each of the moving parties has submitted a copy of this document, signed by the movant. The terms of these agreements are essentially the same. Accordingly, the court will refer to "the agreement," in the singular.

The provision relied on by the movants states as follows (footnotes added by the court).

3

> RELEASORS[2] AND RELEASED PARTIES[3] shall bear their
> own attorneys' fees and costs incurred in the litigation and
> through the execution of this AGREEMENT.

*See, e.g.*, doc. no. 176-1, p. 6 of 8 (agreement signed by Pretzer). Movants argue that by this provision, Good to Go and Reynolds and their representatives, as released parties, gave up any claim which Travis, as their representative in this federal action, might otherwise have to an equitable lien on the state-court settlement proceeds. The court rejects this argument.

<u>First</u>, in their effort to bind Travis, movants rely on specific, written, contractual language purportedly agreed to by Good to Go and Reynolds. Yet movants present no evidence which shows that Good to Go and Reynolds signed the agreement or otherwise agreed to its terms or to the specific provision in question. Travis has not raised this issue and the court does not make too much of this missing link in the chain of evidence, nor does the court deny the motions on this ground. The court simply notes that if it were inclined to grant the motions (which it is not, for the reasons set out below), the court would be required to infer, based on other undisputed matters,[4] that Good to Go and Reynolds did, in fact, agree to the provision relied on by the movants.[5]

<u>Second</u>, the relied-upon language may be ambiguous with respect to whether it covers fees for services rendered to Good to Go and Reynolds in this federal

---

[2] "RELEASORS" is a defined term which includes the state-court plaintiffs who are now movants.

[3] "RELEASED PARTIES" is a defined term which includes Good to Go and Reynolds, and their "representatives."

[4] For example, it is undisputed the state-court litigation settled, and that counsel for Good to Go and Reynolds in the state-court litigation drafted the agreement (although that is not quite the same thing as their clients agreeing to its terms).

[5] Furthermore, at the summary judgment stage, it is the non-movant (Travis), rather than the movants (state-court plaintiffs) who are entitled to favorable inferences.

litigation (as opposed to fees for services rendered to these parties in the state-court actions).

The agreement states that the released parties "shall bear their own attorneys' fees and costs incurred in the litigation …." But "the litigation" is not a defined term.[6] If Travis had raised this issue (he did not), movants presumably would have responded that the agreement was drafted by counsel for Good to Go and Reynolds in the state-court action, so that "fees … incurred in the litigation" should be construed against the drafters, to include fees for services rendered by Travis on behalf of Good to Go and Reynolds in this federal litigation.[7] The rule that ambiguous terms are construed against the drafter is, however, based on a presumption that the drafter had the opportunity to choose the terms used in the contract.[8] Here, it is undisputed that Travis had no involvement in drafting the agreement or in any aspect of the state-court litigation.[9] In these circumstances, it is unclear whether "fees … incurred in the litigation" should be construed to include fees incurred in this federal action -- an issue on which movants present no argument.

The court also notes another provision in the agreement (also not raised by Travis or any other party) which could potentially be in play with respect to the intended scope of the attorneys' fee provision relied on by movants. That other

---

[6] The agreement broadly describes the claims which are released by the releasors (state-court plaintiffs), but it does not address the scope of any claims (such as claims for attorneys' fees) which are given up by the released parties (Good to Go and Reynolds and their representatives).

[7] *See*, McMinn v. City of Oklahoma City, 952 P.2d 517, 522 (Okla. 1997) ("If terms in the contract are ambiguous, it must be construed against the drafter of the contract," citing authorities).

[8] *See*, *id.* ("Here the City had opportunity to choose the terms used in the contract.").

[9] Some movants argue that Travis was on notice of the language in question, but they cite no supporting evidence. Doc. no. 187, p. 4, proposed fact no. 5. Travis has submitted an affidavit stating he has never been a party to the underlying state-court cases, was not involved as an attorney in those cases, and never saw the release documents upon which the state-court plaintiffs now rely. Doc. no. 191-1.

provision states: "The RELEASORS agree to satisfy from the proceeds of this settlement and be solely responsible for any and all liens, rights of subrogation, losses, liability, actions, damages, causes of action, judgments, costs and expenses, including attorneys fees, whatsoever made by or sustained by or arising from any person, … arising in whole or in part out of the INCIDENT, or in any way connected to the INCIDENT." *See*, *e.g.*, Pretzer agreement, doc. no. 176-1, pp. 2-3 of 8 (emphasis added). Yet another provision (also not cited in any briefs) states: "The RELEASORS understand that this claim is being settled as a business decision only and that payment of the sums specified herein are being made as a complete compromise of matters involving disputed issues of law and fact and the RELEASORS thereby assume the risk that the facts or law may be otherwise than RELEASORS believe." *Id*. at p. 5 of 8 (emphasis added).

The court has not had the benefit of any advocacy on these interpretive issues, and so it makes no definitive rulings in this regard. The point is simply that even if the court were to conclude that Travis is bound by the agreement, it might not follow that his equitable lien is precluded by the agreement, read as a whole.

Third, and crucially, not only did Travis have no involvement in drafting or securing the agreement upon which the movants rely, Travis is not a party to that agreement.

In Jacks v. CMH Homes, Inc., 856 F.3d 1301, 1304 (Okla. 2017), the Court states: "As every first-year law student knows, an agreement or mutual assent is of course essential to a valid contract."[10] Jacks notes that the defendants in that case did not cite a single case to support their premise that a third-party beneficiary to an

---

[10] The issue in Jacks was whether nonsignatory plaintiffs were bound by an arbitration agreement which designated "any occupants of the Manufactured Home" as "intended beneficiaries of this Arbitration Agreement." *Id*. at 1305. Jacks states that a rule which holds "unwitting third parties could be bound to a contract without knowing its terms or ever realizing some benefit" would "make no sense." *Id*.

6

arbitration agreement is bound by the agreement. *Id*. at 1305. The Court states, "As the parties seeking to compel arbitration, Defendants have the burden to establish that the nonsignatory plaintiffs can be held to the arbitration agreement." *Id*.

Similarly here, it is movants' burden to establish that Travis, a nonsignatory to the agreement, is bound by the agreement. Movants cite no authority which suggests Travis would be bound in the circumstances of this case, which include the fact that Travis is not a party to the agreement, was not involved in drafting the agreement, and played no role in the state-court litigation.

<u>Fourth</u>, the court rejects movants' argument that Travis cannot avoid the terms of the agreement on the ground that he was not a party to it while simultaneously claiming the state-court plaintiffs are bound by the terms of Travis's contingency fee agreement with his clients, to which the state-court plaintiffs are not parties. This argument is based on a false equivalency. Movants seek to bind Travis under a contract theory of law. Travis's lien, on the other hand, is not based on the terms of the contract between Travis and his clients. Travis's lien is an equitable lien based on flexible principles of *quasi-contract* which entitle Travis to the *quantum meruit* value of Travis's services as compared to the contributions of the services of other counsel, in relation to the result obtained for the state-court plaintiffs in the underlying state-court tort actions.

<u>Conclusion</u>

After careful consideration, the motions are **DENIED**.

At the last status and scheduling conference, the court advised that after the court rules on the motions which were then due by July 31, 2019 (as it has now done), it would set another scheduling conference for the purpose of establishing a trial date. The only issue remaining for trial is the appropriate amount of Travis's equitable lien based on a *quantum meruit* evaluation of the reasonable value of his services, not to exceed fifteen percent of the recovery. The parties are best situated

7

to determine that issue. If, however, the parties are unable to resolve that issue short of trial, the court will resolve it for them, guided by the principles set out in the earlier order which upheld Travis's equitable lien. *See*, doc. no. 172 (including p. 12, ¶¶ 10-11, explaining how the *quantum meruit* value of Travis's services will be determined).

This matter is **SET** for a scheduling conference on September 20, 2019 at 1:30 p.m., in chambers, Room 4301, United States Courthouse, N.W. 4th and Harvey, Oklahoma City, Oklahoma, for the purpose of selecting a trial date and establishing deadlines for any remaining pre-trial filings.

IT IS SO ORDERED this 22nd day of August, 2019.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

16-1067p044 rev_.docx